# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MOORE on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : | Case No. |
| v. | : : | |
| HEALTHCOMPARE INSURANCE SERVICES, INC. and MICHAEL RUSS, | : : : | |
| Defendants. | / | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2. HealthCompare Insurance Services, Inc. ("HealthCompare"), through its licensed insurance agent Michael Russ ("Mr. Russ") (collectively referred to as the "Defendants") engaged in a cold-calling, telemarketing campaign to promote HealthCompare's insurance services to persons who had no prior relationship with them (the "Telemarketing Campaign").

3. HealthCompare also did not have proper policies and procedures in place to ensure that they engaged in telemarketing in a manner that complied with federal law.

4. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action against the Defendants on behalf of proposed nationwide classes of other persons who received calls during the Telemarketing Campaign.

5. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6. Plaintiff George Moore is a resident of Illinois in this District.

7. Defendant HealthCompare is a Delaware corporation with its principal place of business at 5630 University Parkway in Winston-Salem, NC 27105. HealthCompare is also licensed to do business and does business in Illinois. It can be served through Illinois Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62703.

8. Defendant Michael Russ is a licensed insurance agent for HealthCompare located at 9230 Crabtree Ln., Port Richey, FL 34668.

## Jurisdiction & Venue

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

10. The Defendants are subject to specific personal jurisdiction in this District because it engaged in telemarketing efforts that target this District, including the efforts made to

contact the Plaintiff. Furthermore, both defendants are licensed to issue insurance or do business in the State of Illinois.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Moore is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit.

## TCPA Background

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

13. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14. In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

15. Pursuant to this statutory mandate, the FCC issued two regulations.

16. First, the relevant regulation under § 227(c) established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

3

17. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

18. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

19. These procedures are codified at 47 CFR 64.1200(d)(1)-(7).

20. Specifically, § 64.1200(d) requires a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

21. These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

22. Accordingly, all telemarketing calls violate the TCPA unless a defendant can demonstrate that it has implemented the required policies and procedures.

23. Consent is irrelevant to § 64.1200(d).

24. A violation of § 227(c) through 47 C.F.R. § 64.1200(d) carries statutory damages of $500 to $1,500 per call.

25. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

26. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

27. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

28. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## Factual Allegations

Calls to Mr. Moore

29. The Defendants contacted Mr. Moore on a residential telephone number (727) 753-XXXX.

30. This number is not used for commercial purposes.

31. Mr. Moore uses the number for personal calls.

32. The number has been continuously on the National Do Not Call Registry for years prior to the receipt of the calls at issue.

33. Mr. Moore received telemarketing calls from Mr. Russ, or a company he retained to provide insurance leads, on October 21, 26, 27, 28, November 4, 10, and 18, 2020.

34. The Caller ID was manipulated by Mr. Russ or the company he hired.

35. Mr. Moore answered the calls.

5

36. During the first five calls, Mr. Moore was told the caller was calling from "Health Markets" offering insurance services.

37. Mr. Moore was not interested and terminated the calls.

38. During the November 10, 2020 call, Mr. Moore was again told the caller was calling from "Health Markets", and spoke with a "Veronica" who offered insurance services and connected Mr. Moore with Mr. Russ.

39. Mr. Russ advertised HealthCompare's insurance services.

40. Mr. Moore was not interested, and terminated the call after confirming the identities of Mr. Russ and the company whose services he was promoting.

41. On November 13, 2020, the Plaintiff sent an e-mail to HealthCompare advising HealthCompare of the illegal calls and requesting a copy of its Do Not Call Policy.

42. Mr. Moore did not receive a response.

43. HealthCompare did not provide Mr. Moore with a copy of its Do Not Call Policy.

44. Instead, Mr. Moore received another call from Mr. Russ on November 18, 2020 promoting HealthCompare services again.

45. When Mr. Moore advised Mr. Russ that he had previously advised HealthCompare that he did not want to receive further calls, Mr. Russ stated that he had not been made aware of that fact.

46. Plaintiff and all members of the classes defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance. The calls also occupied Plaintiff's telephone line from legitimate communication.

47. Plaintiff has not provided Defendants with his prior express written consent to place telemarketing calls to him.

### HealthCompare's Liability

48. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

49. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

50. In that ruling, the FCC instructed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd. at 6588, ¶ 37 (internal citations omitted).

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574, ¶ 1 (2013) ("May 2013 FCC Ruling").

51. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd. at 6586, ¶ 34.

52. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd. at 6592, ¶ 46.

53. By permitting its agents to engage in telemarketing, HealthCompare "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

54. HealthCompare directs its agents as to what sales tactics to use as well as what insurance products and services to offer to potential customers.

55. Mr. Russ is a captive agent of HealthCompare.

56. HealthCompare gave Mr. Russ the authority to bind it in contract.

57. At all times, HealthCompare maintained interim control over its agents.

8

58. For example, HealthCompare had absolute control over whether, and under what circumstances, it would accept a customer from an agent and the various methods by which its agents could advertise to obtain clients for HealthCompare.

59. Additionally, HealthCompare had the ability and the authority to restrict the geographic regions in which its agents could market for HealthCompare.

60. HealthCompare also had the ability to audit and investigate to ensure that its agents' marketing of HealthCompare products and services was compliant with the law.

61. HealthCompare allowed its agents to hold themselves out to the public as if they were agents of HealthCompare.

62. HealthCompare has been sued multiple times for the conduct of its agents in alleged violation of the TCPA. *See Naiman v. HealthCompare Insurance Services, Inc., et. al.*, Civil Action No. 2:19-cv-04748 (D. AZ.); *Hall v. HealthCompare Insurance Services, Inc., et. al.*, Civil Action No. 2:20-cv-1209 (D. NM.).

63. HealthCompare has also received other non-lawsuit complaints related to telemarketing.

64. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593, ¶ 46.

## Class Action Allegations

65. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings

9

this action on behalf of the following classes of persons or entities similarly situated throughout the United States.

66. The classes of persons Plaintiff proposes to represent are tentatively defined as:

**Policy Class:** Plaintiff and all persons within the United States to whose telephone number: (1) HealthCompare placed (or had placed on its behalf); (2) two or more telemarketing telephone calls; (3) in a 12-month period; (4) within four years prior to the commencement of this litigation until the class is certified.

**National Do Not Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days (2) but who received more than one telemarketing call (3) from or on behalf of HealthCompare (4) with a 12-month period, (5) from four years prior to the filing of the Complaint.

67. Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

68. The classes as defined above are identifiable through phone records and phone number databases.

69. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

70. Plaintiff is a member of the classes.

71. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    (a) whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

    (b) whether Defendants made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

    (c) whether HealthCompare is vicariously liable for Michael Russ's conduct;

    (d) whether Defendants' conduct constitutes a violation of the TCPA; and

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

72. Plaintiff's claims are typical of the claims of class members.

73. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and is represented by counsel skilled and experienced in class actions, including TCPA class actions.

74. The actions of the Defendants are generally applicable to the classes as a whole and to Plaintiff.

75. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

76. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**Legal Claims**

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.)**
**on behalf of the National Do Not Call Registry Class**

77. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

78. Defendants violated the TCPA and the Regulations by making, or having their agent make, two or more telemarketing calls within a 12-month period on their behalf to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

79. As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

80. Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

81. The Defendants' violations were knowing or willful.

**SECOND CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227(c) and 47 C.F.R. §§ 64.1200(d))**
**on behalf of the Policy Class**

82. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

83. Defendants placed numerous calls for telemarketing purposes to Plaintiff's and Policy Class members' telephone numbers.

84. Defendants did so despite not having a written policy pertaining to "do not call" requests or having a practice of not providing one when requested.

85. Defendants did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

86. Defendants placed two or more telephone calls to Plaintiff and Policy Class members in a 12-month period.

87. Plaintiff and Policy Class members are entitled to an award of $500 in statutory damages telephone call in addition to and separately from any award for damages related to this conduct.

88. Plaintiff and Policy Class members are entitled to an award of treble damages in an amount up to $1,500 per telephone call if the Defendants' violations were knowing and/or willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future;

B. As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d), Plaintiff seeks for himself and each member of the National Do Not Call Registry Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

D. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

                                                      PLAINTIFF,
                                                      By his attorney

                                                      */s/ Anthony I. Paronich*
                                                      Anthony I. Paronich
                                                      Paronich Law, P.C.
                                                      350 Lincoln Street, Suite 2400
                                                      Hingham, MA 02043
                                                      (508) 221-1510
                                                      anthony@paronichlaw.com